UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                           :

UNITED STATES OF AMERICA

                           :

      - v -

                           :         22 Cr. 42 (CS)

ARDAE HINES,

                           :

               Defendant.

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

 

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN
OPPOSITION TO DEFENDANT ARDAE HINES' MOTION TO SUPPRESS**

 

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Lindsey Keenan
Samuel Raymond
Assistant United States Attorneys
   *Of Counsel*

# Table of Contents

**PRELIMINARY STATEMENT** ........................................................................................ **1**

**FACTUAL BACKGROUND** .............................................................................................. **1**

**ARGUMENT** .......................................................................................................................... **7**

**I.   Law Enforcement's 2017 Seizure of the Hines Phone Was Lawful** ............................ **7**
   A.   Applicable Law ...................................................................................................... 7
   B.   Discussion ............................................................................................................ 10

**II.   Hines's February 9, 2022 Post-Arrest Statements Are Admissible** ............................ **15**
   A.   Applicable Law .................................................................................................... 15
   B.   Discussion ............................................................................................................ 17

**III.   There Was No Improper Police Influence Before Witness-2's Identification of Hines** **19**
   A.   Applicable Law .................................................................................................... 19
   B.   Discussion ............................................................................................................ 22

**IV.   Hines Lacks Standing to Challenge Most of the Warrants; the Warrants Comply with the Fourth Amendment; and in the Alternative, Law Enforcement Acted in Good Faith in Executing the Warrants** ...................................................................................................... **25**
   A.   Applicable Law .................................................................................................... 26
      1.   Standing ............................................................................................................ 26
      2.   Probable Cause ................................................................................................. 27
      3.   Particularity ...................................................................................................... 29
      4.   Overbreadth ...................................................................................................... 31
      5.   Manner of Search ............................................................................................. 32
      6.   Good Faith ........................................................................................................ 33
   B.   Discussion ............................................................................................................ 34
      1.   Hines Lacks Standing to Challenge the 2017, 2021, and 2022 Facebook Warrants, and the 2017 CSLI Warrant ................................................................................... 34
      2.   The 2017 ESI Warrant and 2021 ESI and Facebook Warrant are Sufficiently Particular, are Not Overbroad, and Are Supported by Adequate Probable Cause ................... 35
      3.   The 2017 CSLI Warrant is Sufficiently Particular and is Not Overbroad ................... 39
      4.   The Challenged Facebook Warrants Were Supported by Probable Cause and Are Sufficiently Particularized ........................................................................................ 40
      5.   In the Alternative, Law Enforcement Relied on the Warrants in Good Faith ............. 42

**V.   There is no Basis to Suppress Recorded Jail Calls** ...................................................... **43**

**CONCLUSION** ..................................................................................................................... **44**

# Table of Authorities

**CASES**

*Abdur Raheem v. Kelly*, 257 F.3d 122 (2d Cir. 2001) ................................................... 27

*Berghuis v. Thompkins*, 560 U.S. 370 (2010) ............................................................ 23

*Berkemer v. McCarty*, 468 U.S. 420 (1984) .............................................................. 24

*Black v. Petitinato*, 761 F. App'x 18 (2d Cir. 2019) ................................................. 16

*Brisco v. Ercole*, 565 F.3d 80 (2d Cir. 2009) ............................................................ 28

*Colorado v. Connelly*, 479 U.S. 157 (1986) ............................................................. 22

*Colorado v. Spring*, 479 U.S. 564 (1987) ................................................................. 23

*Dalia v. United States*, 441 U.S. 238 (1979). ...................................................... 38, 44

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018).......................................... 34, 47

*Edwards v. Arizona*, 451 U.S. 477 (1981) ................................................................ 22

*Gerstein v. Pugh*, 420 U.S. 103 (1975)..................................................................... 47

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ...................................... 39

*Green v. Scully*, 850 F.2d 894 (2d Cir. 1987) .................................................. 23, 24, 25

*Griffin v. Wisconsin,* 483 U.S. 868 (1987)................................................................ 15

*Groh v. Ramirez*, 540 U.S. 551 (2004) .................................................................... 36

*Haynes v. Washington*, 373 U.S. 503 (1963)............................................................ 23

*Illinois v. Gates*, 462 U.S. 213 (1983) .......................................................... 34, 35, 47

*In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxx@gmail.com Maintained at a Premises Controlled by Google, Inc.* ("*In re Google Warrant*"), 33 F. Supp. 3d 386 (S.D.N.Y. 2014)................................. 38, 44

*Jarrett v. Headley*, 802 F.2d 34 (2d Cir. 1986).......................................................... 28

*Jones v. United States*, 362 U.S. 257 (1960) ............................................................ 35

*Kaley v. United States*, 571 U.S. 320 (2014) ............................................................ 34

*Kentucky v. King*, 563 U.S. 452 (2011) .................................................................... 14

*Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006) ............................................................ 26

*Lynumm v. Illinois*, 372 U.S. 528 (1963) ................................................................. 24

*Manson v. Brathwaite*, 432 U.S. 98 (1977) ......................................................... 28, 31

*Miranda v. Arizona*, 384 U.S. 436 (1966) ........................................................... 22, 24

*Moran v. Burbine*, 475 U.S. 412 (1986) .................................................................. 23

*Neil v. Biggers*, 409 U.S. 188 (1972)....................................................................... 28

*Oregon v. Elstad*, 470 U.S. 298 (1985)..................................................................... 23

*Perry v. New Hampshire*, 132 S. Ct. 716 (2012) ....................................................... 26

*Rakas v. Illinois*, 439 U.S. 128 (1978)..................................................................... 32

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ..................................................... 24

*Texas v. Brown*, 460 U.S. 730 (1983) ...................................................................... 35

*Toste v. Lopes*, 701 F.Supp. 306 (D. Conn. 1987)..................................................... 25

*U.S. Postal Service v. C.E.C. Services*, 869 F.2d 184 (2d Cir. 1989)........................... 37

*United States v. Ahmad*, 992 F. Supp. 682 (S.D.N.Y. 1998)...................................... 19

*United States v. Alfaro*, No. 21-CR-6118EAW, 2022 WL 4287664 (W.D.N.Y. June 21, 2022)  20

*United States v. Archibald*, 734 F.2d 938 (2d Cir. 1984) ............................................................. 26

*United States v. Barner,* 666 F.3d 79 (2d Cir. 2012) .................................................... 15, 18, 20

*United States v. Bautista,* 23 F.3d 726 (2d Cir.1994) ................................................................. 30

*United States v. Bazemore*, 20 Cr. 573 (ER), 2021 WL 1719233 (S.D.N.Y. Apr. 30, 2021)....... 18

*United States v. Braggs*, 5 F. 4th 183 (2d Cir. 2021).................................................... 15, 19, 20

*United States v. Caming*, 968 F.2d 232 (2d Cir. 1992).............................................................. 27

*United States v. Castellano*, 610 F. Supp. 1359 (S.D.N.Y. 1985)............................................... 27

*United States v. Chandler*, 164 F. Supp. 3d 368 (E.D.N.Y. 2016)............................................. 21

*United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) ..................................................... 35, 36, 39, 48

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992) ........................................................ 27

*United States v. Cook*, No. 20-CR-84-LJV, 2021 WL 6133280 (W.D.N.Y. Dec. 27, 2021)....... 17

*United States v. David Brown*, 16 Cr. 361 (CS) ........................................................................ 25

*United States v. Devaughn*, No. 21 CR. 308 (NSR), 2022 WL 101910 (S.D.N.Y. Jan. 11, 2022)
........................................................................................................................................... 17, 18

*United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637 (S.D.N.Y. Dec. 21,
2022) ................................................................................................................................... 40

*United States v. Dore*, 586 F. App'x 42 (2d Cir. 2014) ............................................................ 33

*United States v. Eley*, No. 20 CR. 78-3 (AT), 2022 WL 1608068 (S.D.N.Y. May 20, 2022)...... 30

*United States v. Fiseku*, No. 15 Cr. 384 (PAE), 2015 WL 7871038 (S.D.N.Y. Dec. 3, 2015) .... 25

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) ...................................................... 36, 37, 43

*United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), *rehearing en banc granted* 791 F.3d 290
(June 29, 2015) ..................................................................................................................... 38

*United States v. Grimes,* 225 F.3d 254 (2d Cir. 2000)............................................................... 15

*United States v. Haqq*, 278 F.3d 44 (2d Cir. 2002) .................................................................. 32

*United States v. Harris*, No. 19 Cr. 746 (NSR), 2021 WL 1512724 (S.D.N.Y. Apr. 16, 2021) . 16,
21

*United States v. Iverson*, 897 F.3d 450 (2d Cir. 2018) .............................................................. 14

*United States v. Jacobson*, 4 F. Supp. 3d 515 (E.D.N.Y. 2014) ................................................ 37

*United States v. Jaswal*, 47 F.3d 539 (2d Cir. 1995) (per curiam) ............................................. 22

*United States v. Jones*, 43 F.4th 94 (2d Cir. 2022) .................................................................. 40

*United States v. Kidd*, 386 F. Supp. 3d 364 (S.D.N.Y. 2019) .................................................... 42

*United States v. King*, No. 21-CR-255 (NSR), 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022). 28, 31

*United States v. Kiyuyung*, 171 F.3d 78 (2d Cir. 1999) ............................................................ 16

*United States v. Lambus*, 897 F.3d 368 (2d Cir. 2018).............................................................. 16

*United States v. Leon*, 468 U.S. 897 (1984)............................................................................. 39

*United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013).......... 42

*United States v. Lewis*, No. 16 Cr. 786 (NSR), 2018 WL 6241445 (S.D.N.Y. Nov. 29, 2018)... 34

*United States v. Lustyik*, 57 F. Supp. 3d (S.D.N.Y. 2014)................................................. 34, 36, 44

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990).............................................. 27

*United States v. Martin*, 426 F.3d 68 (2d Cir. 2005) ......................................................... 34, 44

*United States v. Mathurin*, 148 F.3d 68 (2d Cir. 1998) ............................................................ 18

*United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 1017533 (S.D.N.Y. Mar. 2, 2019)
........................................................................................................................................... 42

*United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) ................................ 38
*United States v. Montoya-Eschevarria*, 892 F. Supp. 104 (S.D.N.Y. 1995) ............ 33, 41
*United States v. Morgan*, 690 F. Supp. 2d 274 (S.D.N.Y 2010) ........................... 28, 30
*United States v. Nejad,* 436 F. Supp. 3d 707 (S.D.N.Y. 2020)..................................... 45
*United States v. Newton,* 369 F.3d 659 (2d Cir. 2004) ...................................... 16, 20
*United States v. Osorio*, 949 F.2d 38 (2d Cir. 1991) ................................................ 33
*United States v. Padilla*, 508 U.S. 77 (1993) (per curiam)......................................... 32
*United States v. Paulino*, 850 F.2d 93 (2d Cir. 1988)................................................ 33
*United States v. Pena*, 961 F.2d 333 (2d Cir. 1992) ................................................. 18
*United States v. Ray*, 541 F. Supp. 3d 355 (S.D.N.Y. 2021) ..................................... 45
*United States v. Reyes*, 283 F.3d 446 (2d Cir. 2002)........................................ passim
*United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) ........................................... 36, 37
*United States v. Romain*, No. 13 Cr. 924 (RWS), 2014 WL 6765831 (S.D.N.Y. Dec. 1, 2014) . 44
*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) .................................................. 35
*United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010) ............................................ 36, 39
*United States v. Ruggiero*, 824 F. Supp. 379 (S.D.N.Y. 1993) ................................... 26
*United States v. Salomon-Mendez*, 992 F. Supp. 2d 340 (S.D.N.Y. 2014)...................... 26
*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) ............................................... 23
*United States v. Scott*, No. 21 CR. 429 (AT), 2021 WL 4125212 (S.D.N.Y. Sept. 9, 2021) . 29, 31
*United States v. Serrano*, 13 Cr. 58 (KBF), 2014 WL 2696569 (June 10, 2014)..................... 33
*United States v. Serrano*, No. 13 Cr. 58 (KBF), 2014 WL 2696569 (S.D.N.Y. June 10, 2014).. 33
*United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991).......................................... 28
*United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993) ................................................ 35
*United States v. Speed*, 272 F. App'x 88 (2d Cir. 2008)........................................... 21
*United States v. Swain*, No. 08 Cr. 1175, 2011 WL 4348142 (S.D.N.Y. Aug. 16, 2011) 26, 29, 30
*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) .................................................. 28
*United States v. Travisano*, 724 F.2d 341 (2d Cir. 1983) ......................................... 35
*United States v. Turner*, 21 Cr. 409 (CM), 2021 WL 8055692 (S.D.N.Y. Dec. 20, 2021) ......... 21
*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017)............................... 36, 37, 42, 48
*United States v. Ulbricht*, No. 14-CR-68 KBF, 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014).... 37
*United States v. Ventresca*, 380 U.S. 102 (1965)................................................... 35
*United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) ..... 44
*United States v. Viscioso*, 711 F. Supp. 740 (S.D.N.Y. 1989)..................................... 27
*United States v. Wade*, 388 U.S. 218 (1967) .................................................. 26, 31
*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993)............................................. 34
*United States v. Washington*, No. 12-CR-146 (JPO), 2012 WL 5438909 (S.D.N.Y. Nov. 7, 2012)
.................................................................................................................. 21
*United States v. Watson*, 404 F.3d 163 (2d Cir. 2005) ........................................... 33
*United States v. Weaver*, 9 F.4th 129 (2d Cir. 2021) .............................................. 47
*United States v. Williams*, 13 Cr. 580 (JMF), 2014 WL 144920 (S.D.N.Y. Jan. 15, 2014)... 29, 30
*United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988)......................................... 49
*United States v. Workman*, 80 F.3d 688 (2d Cir. 1996)........................................... 49
*United States v. Young*, 745 F.2d 733 (2d Cir. 1984) ............................................. 36
*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007)........................................................ 35

**STATUTES**

18 U.S.C. § 1962 .................................................................................................. 40
21 U.S.C. § 841 .................................................................................................... 40
21 U.S.C. § 846 ................................................................................................ 40, 41

**RULES**

Fed. R. Crim. P. 41 .............................................................................................. 32

# List of Exhibits

**Gov't Ex. A**: February 7, 2019 Plea Tr. in *United States v. Hines*, 17 Cr. 364 (CS)

**Gov't Ex. B**: Ardae Hines' New York State Inmate Record Sheet

**Gov't Ex. C**: Version of 9 N.Y.R.R. § 8003.2 in Effect in June 2017

**Gov't Ex. D**: Ardae Hines' 2017 Conditions of Release to Parole Supervision

**Gov't Ex. E**: February 14, 2017 Order of Interception

**Gov't Ex. F**: Relevant Linesheets From Pendency of February 14, 2017 Order of Interception

**Gov't Ex. G**: February 9, 2022 Advice of Rights to Ardae Hines

**Gov't Ex. H**: August 2, 2017 Search and Seizure Warrant, 17 Mag. 5797

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the pretrial suppression motion of defendant Ardae Hines (Dkt. Nos. 20–23; the memorandum at Dkt. No. 23 is called herein "Def. Mot." and the defendant's declaration at Dkt. No. 22 "Hines Decl."). The defendant moves to suppress (i) a phone seized at the time of his June 14, 2017, arrest; (ii) statements he made to law enforcement upon his arrests on June 14, 2017 and February 9, 2022; (iii) a witness identification made in connection with a six-pack photo array; (iv) evidence obtained pursuant to search warrants: for the phone seized on June 14, 2017; for historical cellsite location information; and for a Facebook account; and (v) recorded jail calls. As described herein, the defendant's motion should be denied without a hearing.

## FACTUAL BACKGROUND

In 2016, the defendant was a leader in a Newburgh street gang known as "Southside." (Gov't Ex. A: February 7, 2019 Plea Tr. in *United States v. Hines*, 17 Cr. 364 (CS) ("Plea Tr.") 18:16-19 ("I grew up in Newburgh, New York with a group of individuals that the government here calls Southside. I associated with those individuals insofar as it relates to my sales of crack cocaine and heroin.")).[1] On August 1, 2016, Deandric Little was shot and killed in Newburgh. (Indictment in the instant case (the "Murder Indictment") ¶¶ 8, 9). As charged in the instant indictment, the murder was carried out at Hines's direction, after he instructed a co-conspirator to shoot and kill Little in furtherance of the defendant's role in Southside and in connection with the defendant's drug dealing. (Murder Indictment ¶¶ 8, 9).

---

[1] As this Court knows, and as described further below, on February 7, 2019, Hines pleaded guilty before this Court to participating in racketeering and narcotics trafficking conspiracies.

On August 20, 2016, detectives from the City of Newburgh Police Department conducted an interview of a witness, described in discovery and in Hines's motion as "Witness-2." (Def. Ex. 21). As is evidenced by the statement provided by Witness-2, Witness-2 had a pre-existing relationship with Hines. (Def. Ex. 21 at 1 (among other statements, Witness-2 informed the detective about "Ardea [sic] who is YM")). [2]  After interviewing Witness-2, the detective administered a six-pack photo array. (Def. Ex. 20). Witness-2 identified a photograph of the defendant as the subject of the interview, saying "he was arguing but not the shooter. He did say 'kill that n[]' to a group." (Def. Ex. 20 at 2).

On or about October 12, 2016, Hines was sentenced to a period of incarceration, following his conviction in New York State on charges of grand larceny. He was released to parole supervision on February 21, 2017. (Gov't Ex. B: Inmate Record Sheet at 002: "2/21/17 Downstate Rec Rel Par Supr")[3]. As a parolee, under New York State law, the defendant was subject to a number of conditions of release. Those conditions included that he would "permit his parole officer to visit him at his residence" and would "permit the search and inspection of his person, residence and property."  (Gov't Ex. C: Version of 9 N.Y.R.R. § 8003.2, New York's Parole Release conditions statute, which was in effect from 1986 to July 2020)). [4]  Hines's parole conditions were

---

[2]  The Government also expects that consistent with the August 20, 2016 interview, Witness-2 will testify at trial that Witness-2 had a preexisting relationship with Hines for a number of years.

[3]  The Government is submitting its exhibits B and D to the Court under seal, because they contain personal information; the Government will confer with defense counsel on the necessary redactions.  The Government is also filing Exhibit E with redactions related to uncharged individuals.

[4]  The current statute reads in relevant part that the "conditions of release" include     that     the parolee "will permit my Parole Officer to visit me at my residence, will permit the search and inspection of my person, residence and property."  9 N.Y.R.R. § 8003.2(4).

provided to him on February 10, 2017, when he executed a Special Conditions of Release to Parole Supervision form, and on November 21, 2016, when he executed a Certificate of Release to Parole Supervision. (Gov't Ex. D: Hines Parole Records at 1, 2).

In executing the Release to Parole forms, Hines certified that he understood that he would be subject to "Parole Supervision," and "fully underst[ood] that [his] person, residence and property are subject to search and inspection." (Gov't Ex. D at 2 and continuing at ¶ 4 "I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property."). The defendant also certified that he understood that "Parole Supervision is defined by these Conditions of Release and all other conditions that may be imposed upon me by the Board [of Parole] or its representatives." (Gov't Ex. D at 2). The form includes a numbered list of Hines's "Conditions of Release." Hines certified, "I will not behave in such a manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of myself or others." (Gov't Ex. D at 2 ¶ 8). Hines also certified "I will not . . . possess any drug paraphernalia or . . . possess any controlled substance without proper medical authorization." (Gov't Ex. D at 2 ¶ 11). At the time of his release, the defendant's term of parole supervision was set to run until October 4, 2019, and that date was listed on the Certificate of Release form. (Gov't Ex. D at 2).

In February 2017, the FBI obtained a Title III wiretap for a phone used by William Fennell, a Newburgh drug dealer and gang member. (Gov't Ex. E). During the pendency of the wiretap, on or about March 11, 2017, Fennell called a telephone number ending in 1070 (the "1070 Number"), which the Government will establish at trial belonged to Hines. Fennell said, in substance and in

3

part, "I need that shit now." (Gov't Ex. F: Linesheet of Session 9633). Later that day, after surveillance and other communications demonstrate that the two met up, Fennell called Hines and told him, "that was good, that was good, don't hit it with nothing else." (Gov't Ex. F: Linesheet of Session 9862). The evidence at trial will establish that Hines sold Fennell heroin that day. (Plea Tr. 18:19-21 ("on March 11, 2017, I sold heroin to a co-defendant, who I knew needed it for further distribution")).

On or about March 16, 2017, the Honorable Judith C. McCarthy, United States Magistrate Judge, authorized a warrant for seven Facebook accounts, one of which was for the account with handle "YM Sbe." The Government was authorized to review the Facebook material for evidence of, among other things, narcotics trafficking, the use of firearms in furtherance of the same, and racketeering activity. (Def. Exs. 4 (the "2017 Facebook Warrant App.") and 5 (the "2017 Facebook Warrant")).

On or about June 12, 2017, Hines was charged in a multi-defendant six-count indictment charging him with participating in racketeering c and narcotics trafficking conspiracies. *See* 17 Cr. 364 (CS), Dkt. No. 1 (the "Southside Indictment," and more broadly, 17 Cr. 364 is referred to as the "Southside Case"). On or about June 14, 2017, a team of law enforcement agents including Hines's Parole Officer Thomas Vega, went to Hines's residence to arrest Hines pursuant to an arrest warrant issued on the date the Southside Indictment was returned. (Def. Ex. 8). Officer Vega called Hines's known phone number, and Hines answered the door. (Hines Decl. ¶ 5). Hines was then arrested by the agents, and placed in handcuffs. (Hines Decl. ¶ 8). Hines's girlfriend, cousin, and a child were present in the apartment. (Hines Decl. ¶ 4).

After Hines was placed under arrest, parole officers entered the apartment and picked up a cellular phone they saw in the apartment. (Hines Decl. ¶ 11). There was some disagreement regarding whether the phone belonged to Hines, and the agents determined that the seized phone did not belong to Hines, so they returned it to Hines's cousin who was present. (Hines Decl. ¶ 15). While agents prepared to transport Hines and in his presence, they called Hines' telephone number, which they learned from Officer Vega. (Hines Decl. ¶ 16). Hines's girlfriend answered the ringing phone in Hines' residence, and agents told her they wanted to seize Hines's phone. (Hines Decl. ¶ 16). Agents then went back into the residence to take a phone from Hines's girlfriend (the "Hines Phone") (Hines Decl. ¶ 16). Hines, who observed this happening, did not object.

Upon his arrest, Hines declined to speak to law enforcement officers, first at his residence and then at the FBI office. (Hines Decl. ¶ 20). When officers read Hines his rights at the FBI office, Hines affirmed he understood. (Def. Ex. 9). The second interaction at the FBI office was recorded. Hines repeatedly said that he did not want to speak about the charges against him, but indicated that he wanted tell law enforcement officers which phone they had seized belonged to him and which belonged to his cousin.

On August 2, 2017, Judge McCarthy authorized a search warrant for the Hines Phone, along with dozens of other phones seized during the arrests in June 2017. (Def. Exs. 10 (the "2017 ESI Warrant App.") and 11 (the "2017 ESI Warrant")). In October 2017, the Honorable Paul E. Davison, United States Magistrate Judge, authorized a warrant for historical cell-site location information for dozens of telephone numbers, including the 1070 Number and a number ending in 8930 (the "8930 Number"). (Def. Ex. 12 (the "Historical Cellsite Location Warrant" or "2017 CSLI Warrant")).

5

In September 2018, Hines filed a suppression motion, in which he challenged the admissibility of his June 14, 2017 post-arrest statements; he did not challenge the seizure of the Hines Phone. 17 Cr. 364, Dkt. Nos. 198-200. On February 7, 2019, before disposition of the motion, Hines pleaded guilty to participating in racketeering and narcotics trafficking conspiracies in the Southside Case. In July 2019, this Court sentenced Hines to 15 years' imprisonment. (Def. Ex. 14).

In November 2021, Judge Davison approved a supplemental warrant for the FBI to re-review the data recovered from the Hines Phone and data obtained in response to the 2017 Facebook Warrant. (Def. Exs. 15 (the "2021 ESI and Facebook Warrant App." and 16 (the "2021 ESI and Facebook Warrant") and as to the Hines Phone, collectively with the 2017 ESI Warrant, the "Device Warrants")).

On January 24, 2022, the grand jury returned the Murder Indictment, charging Hines for his participation in Little's murder. (Def. Ex. 3). FBI agents arranged to drive Hines from FCI Allenwood, where he was then incarcerated, to the White Plains courthouse for his presentment. While in the car, Hines refused to sign a *Miranda* form and said he did not want to discuss his case. However, he made a number of statements during the drive. (Def. Ex. 17; Hines Decl. ¶¶ 21-23).

In June 2022, Judge Davison approved a warrant application for the FBI to obtain and review additional information from the YM Sbe account, and another account, for the period from March 1, 2017, until the date the warrant was signed. (Def. Exs. 18 (the "2022 Facebook Warrant App.") and 19 (the "2022 Facebook Warrant"), and collectively with the 2017 Facebook Warrant, and the 2017 ESI Warrant as to the YM Sbe Facebook account, the "Facebook Warrants")).

Via grand jury subpoena, the Government has obtained calls and other communications placed or received by Hines during his periods of incarceration, including in state custody in 2016/2017; federal custody after his arrest on the Southside Indictment in 2017; and more recently after his arrest on the Murder Indictment.

## ARGUMENT

Hines moves to suppress: (i) the Hines Phone (Def. Mot. at 7-10); (ii) his post arrest statements on June 14, 2017 and February 9, 2022 (Def. Mot. at 10-12); (iii) Witness-2's identification (Def. Mot. at 13-15); (iv) evidence obtained pursuant to the Device Warrants (Def. Mot. at 23-28), the 2017 CSLI Warrant (Def. Mot. at 29), and the Facebook Warrants (Def. Mot. at 30-32); and (v) the recorded jail calls (Def. Mot. at 32-33).

Hines's motions are meritless and can be rejected without a hearing.

### I.   Law Enforcement's 2017 Seizure of the Hines Phone Was Lawful

At the time of Hines's June 14, 2017, arrest for his participation in racketeering and narcotics trafficking conspiracies, he was on New York State parole. His commission of those offenses, the fact of his arrest, and his use of a cellular phone to deal narcotics to Fennell in March 2017, provided his parole officer with ample basis to search for and seize the Hines Phone.

### A.  Applicable Law

"Because the ultimate touchstone of the Fourth Amendment is reasonableness, its warrant requirement is subject to certain reasonable exceptions." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). As the Supreme Court has recognized, "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the

usual warrant and probable-cause requirements." *Griffin v. Wisconsin,* 483 U.S. 868, 873-74 (1987).

In light of these special needs, "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties." *United States v. Grimes,* 225 F.3d 254, 259 n.4 (2d Cir. 2000). Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that "the community is not harmed by the [parolee's] being at large." *Griffin,* 483 U.S. at 875; *see also United States v. Reyes*, 283 F.3d 446, 458 (2d Cir. 2002) (a parole officer, "of necessity, must have investigative powers to gather information about the parolee's activities, environment, and social contacts so as to ensure that the conditions of parole are not being violated and to monitor the parolee's progress of reintegration into society.") (citations omitted). In sum, "[b]ecause a search undertaken by a parole officer of a parolee to detect parole violations is reasonably related to the parole officer's duties, such a search is permissible under the Special Needs framework and accordingly comports with the Fourth Amendment." *United States v. Braggs*, 5 F. 4th 183, 188 (2d Cir. 2021) (citations and quotations omitted).

Once a parole officer receives information that, "if true, would have constituted criminal parole violations . . . the ensuing search satisfied the reasonable relationship requirement . . . because it was performed in direct response to information that [the parole officer] obtained and that she had a duty to investigate further." *United States v. Barner,* 666 F.3d 79, 85-86 (2d Cir. 2012); *see also Braggs*, 5 F.4th at 188 (anonymous tip suggesting that parolee violated conditions justifies a search of the parolee's house because such a search "was reasonably related to the performance of the DOCCS officers' duties" and parole officers "were constitutionally permitted to search the house to determine whether Braggs was complying with the relevant condition.");

*United States v. Newton,* 369 F.3d 659, 666 (2d Cir. 2004) ("[O]nce the parole officers in this case received information that Newton had a gun at his residence and had threatened his mother and her husband, it was a reasonable exercise of their parole duty to search Ms. Wright's apartment both to detect the possession of a firearm in violation of Newton's parole and to protect Wright and her husband.") (citations omitted).

The Second Circuit has consistently "held that police officers may coordinate with parole officers to conduct a search of a parolee's home. Police officers are permitted to participate in probation-related searches as a 'coordinated effort' between agencies where 'the probation officers are pursuing legitimate probation-related objectives.'" *Black v. Petitinato*, 761 F. App'x 18, 21– 22 (2d Cir. 2019) (citing *Reyes*, 283 F.3d at 464); *see also United States v. Lambus*, 897 F.3d 368, 404–05 (2d Cir. 2018) ("the fact that a new prosecution may ensue is not a sign that the parole officer was not pursuing his normal duties."); *United States v. Harris*, No. 19 Cr. 746 (NSR), 2021 WL 1512724, at *5 (S.D.N.Y. Apr. 16, 2021) (recognizing that the Second Circuit has long rejected the "stalking horse" theory "whereby a probation officer may not use his/her authority to conduct a search to help other law enforcement entities evade the requirements of the Fourth Amendment.").

During a search, "[a]n item that is observed in plain view may be seized if the probation officer has reasonable grounds to believe that the item is contraband or constitutes evidence of a violation of a condition of release." *Reyes*, 283 F.3d at 468 (citations omitted); *see also United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999) ("Under the 'plain view' exception [to the warrant requirement], if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access

to the object, they may seize it without a warrant.") (citations omitted). Either a parole officer or other law enforcement officer may seize such an item. *See Reyes*, 283 F.3d at 470 ("there is nothing improper about a probation officer adopting a more modest or cautious approach to seizures than is actually permitted by law - one that permits probation officers to rely on law enforcement officers to take hold of the contraband or, indeed, to arrest the person under supervision."). Courts have consistently held that cellphones can be subject to seizure during a parole search. *United States v. Devaughn*, No. 21 CR. 308 (NSR), 2022 WL 101910, at *5 (S.D.N.Y. Jan. 11, 2022) (seizure of phone found in plain view during parole search constitutional when law enforcement had "reasonable grounds for the parole officers to believe the phones contained additional evidence of Defendant's ongoing parole violations"); *United States v. Cook*, No. 20-CR-84-LJV, 2021 WL 6133280, at *3–4 (W.D.N.Y. Dec. 27, 2021) ("If *Braggs* permits anything, it permits a probation officer to ask a probationer for his cell phone").

## B. Discussion

Hines was released to parole supervision on February 21, 2017, and was under supervision at the time of his June 14, 2017, arrest. (See Gov't Ex. B at 002, Gov't Ex. D at 2). Hines's parole supervision included a search condition for his person, residence, and property. (*See* Gov't Ex. D at 2 ¶ 4. ("my person, residence and property are subject to search and inspection.")). Additional conditions were that Hines could not violate the provisions of any law or possess controlled substances. (Gov't Ex. D ¶¶ 8, 11).

At the time of Hines's arrest, Officer Vega knew of the federal arrest warrant and indictment charging Hines with participating in narcotics and racketeering conspiracies, because he participated in Hines's arrest. (Hines Decl. ¶¶ 5, 13, 16). Those charges against Hines were also

parole violations. (Gov't Ex. D ¶¶ 8, 11). Thus, parole authorities were fully justified in searching the entirety of Hines's residence upon his arrest (or at any other time when such a search was reasonably related to the parole officer's duties). *Barner*, 666 F.3d at 85-86; *see also United States v. Bazemore*, 20 Cr. 573 (ER), 2021 WL 1719233, at *3 (S.D.N.Y. Apr. 30, 2021) (parole officer's knowledge of prior arrest sufficient to support search).[5]

During such a search, parole officers and other law enforcement agents could seize contraband or evidence of violation of a condition of release. *Reyes*, 283 F.3d at 468. Here, there was ample evidence that phones used by Hines were contraband and evidence of his violations because Hines had used a phone to distribute narcotics. (*See*, *e.g.*, Gov't Ex. F). Thus, seizure of the Hines Phone was plainly constitutional. *See Reyes*, 283 F.3d at 468; *Devaughn*, 2022 WL 101910, at *5 (holding that seizure of phones during parole search "was rationally and reasonably related to a parole officer's duties of supervision and prevention of further crime" because there were "reasonable grounds for the parole officers to believe the phones contained additional evidence of Defendant's ongoing parole violations.").

Importantly, while the Government believes that certain statements in Hines's declaration are factually incorrect, even if fully credited, Hines's assertions do not raise an issue of material fact necessitating a hearing as to the constitutionality of the seizure. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) ("[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in

---

[5] The Government also notes that Hines did not move to suppress his phone during the pendency of the Southside Case, despite knowing the full circumstances of his arrest and the seizure of the Hines Phone during the pendency of the case.

question."); *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (defendant may not rely on "bald assertions," and "[w]ithout specification of the factual basis" that supports suppression, "the district court is not required to have a hearing."); *see United States v. Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) ("A party seeking to raise a factual issue to be determined at a hearing must submit admissible evidence which, if credited, would make out a prima facie case on the issue. This in turn requires that issue ordinarily be raised by an affidavit of a person with personal knowledge of the facts.").

According to Hines, he was handcuffed and removed from his residence, but then brought back inside by law enforcement officers. (Hines Decl. ¶¶ 5–10). Parole officers then seized a phone from the floor, and Officer Vega stated that "we got what we came for, let's go." (Hines Decl. ¶¶ 11–13). The officers then brought Hines outside the residence again. (Hines Decl. ¶ 14). At that point, Hines's cousin told law enforcement officers they had the wrong phone. (Hines Decl. ¶ 15). An officer then called Hines's telephone number; Hines's girlfriend answered; the officer falsely told Hines's girlfriend that law enforcement had a warrant for his phone. (Hines Decl. ¶ 16). The officers then re-entered the residence and retrieved the phone from Hines's girlfriend. (Hines Decl. ¶ 16).

The seizure of the Hines Phone on these facts was plainly constitutional. Because Hines was on parole, once his parole officer learned information that Hines was acting in "clear violation of his parole conditions," law enforcement could have engaged in a plenary search of his residence to determine if Hines "was complying with the relevant condition[s]" of parole. *Braggs*, 5 F.4th at 185. While searching the residence, law enforcement could seize any contraband or evidence of violation of a condition of release they found there. *Reyes*, 283 F.3d at 468. Instead, as Hines

12

describes, law enforcement "came for" just one item which there was ample evidence Hines had used to violate the conditions of his parole – his phone. When they learned that they had seized a phone that did not belong to Hines, they returned it to its rightful owner. While under the parole exception the officers could then have engaged in a plenary search of Hines' residence to identify any and all contraband or evidence of any violations of release conditions including his actual phone, they instead arranged to merely retrieve the correct device: a reasonable and wholly constitutional seizure.

It is of no moment that at the time of the seizure, Hines already had been placed under arrest. *Barner*, 666 F.3d at 85–86 (affirming search of parolee's residence although parolee was arrested prior to search); *accord Braggs*, 5 F.4th at 185 (when engaged in the search of the parolee's residence, "they immediately handcuffed Braggs for safety reasons for the duration of the search," which they then commenced only after he was handcuffed); *United States v. Alfaro*, No. 21-CR-6118EAW, 2022 WL 4287664, at *3 (W.D.N.Y. June 21, 2022) (affirming parole search when the search team first "clear[ed] the residence to promote officer safety."), *report and recommendation adopted*, No. 6:21-CR-06118 EAW, 2022 WL 3499684 (W.D.N.Y. Aug. 18, 2022). In view of the multiple parole conditions violated by the crimes set forth in the Southside Indictment, law enforcement was entitled to conduct a search of the entirety of Hines's residence even after he was arrested.

Hines's argument that the parole exception is "federal authorities using a state official acting under color of state law to circumvent the Warrant Clause" (Def.'s Mot. at 10 n.19) is similarly unavailing. The Second Circuit has stated that "[t]he so-called 'stalking horse' theory does not exist as a matter of law, since the objectives and duties of probation officers and law

enforcement personnel are often parallel and frequently intertwined. Accordingly, the law permits cooperation between probation officers and other law enforcement officials so that they may work together and share information to achieve their objectives," *Reyes*, 283 F.3d at 471, and has since reaffirmed this holding on multiple occasions. *See, e.g.*, *Newton*, 369 F.3d at 667 ("reiterat[ing] *Reyes*'s rejection of stalking horse challenges" in the context of a parole search); *United States v. Speed*, 272 F. App'x 88, 91 (2d Cir. 2008) (same); *see also, e.g.*, *United States v. Turner*, 21 Cr. 409 (CM), 2021 WL 8055692, at *3–4 (S.D.N.Y. Dec. 20, 2021) ("The fact that Parole coordinated with NYPD officers and NYPD officers were waiting in the wings to assist the Parole officers does not vitiate the lawfulness of the search by Parole."); *Harris*, 2021 WL 1512724, at *5 ("Because the Second Circuit has rejected the stalking horse theory, the Court finds there is no merit to Defendant's argument."); *United States v. Washington*, No. 12-CR-146 (JPO), 2012 WL 5438909, at *7 (S.D.N.Y. Nov. 7, 2012) ("it is crystal clear that the stalking horse theory is not a valid defense to warrantless searches of probationers, parolees, or individuals on supervised release in this Circuit"); *United States v. Chandler*, 164 F. Supp. 3d 368, 381 (E.D.N.Y. 2016) (stalking horse theory not a valid basis for the suppression of evidence in this Circuit).[6]

Regardless, there is no indication that parole was used as a mere ploy to help law enforcement evade any constitutional requirements. It was reasonable and appropriate for Officer Vega to participate in Hines's arrest, given that he was charged with crimes that constituted parole violations, and reasonable and appropriate for law enforcement to seize the Hines Phone, since

---

[6] To the extent Hines submits a reply "rebutting" any "attempt to raise a parolee search exception argument" (Def. Mot. at 10 n.19), the Government respectfully requests permission to file a sur reply.

there was ample reason to believe the phone contained evidence of parole violations, namely the charges in the Southside Indictment.

Accordingly, Hines's motion to suppress information from the Hines Phone because the seizure was unlawful should be denied.

## II.    Hines's February 9, 2022 Post-Arrest Statements Are Admissible

After law enforcement agents provided Hines with *Miranda* warnings on June 14, 2017, and February 9, 2022, Hines voluntarily made certain statements. The Government will not seek to use the statements he made on June 14, 2017, in its case-in-chief, so his motion with respect to those statements is moot. However, the February 9, 2022, statements are admissible against Hines at trial.[7]

### A.  Applicable Law

A defendant has a Fifth Amendment right to counsel when he is subject to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 470-71 (1966); *Edwards v. Arizona*, 451 U.S. 477, 481 (1981).

When a defendant who is in custody is subject to interrogation, the Supreme Court adopted a set of "concrete constitutional guidelines for law enforcement agencies and courts to follow." *Miranda*, 384 U.S. at 442. The suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him," that "he has the right to the presence of an attorney," and that an attorney will be appointed if he cannot afford one. *Id.* at 444.

---

[7] As Hines asserts, the Government previously informed defense counsel that it likely will not seek to introduce any of Hines's post-arrest statements at trial. (Def.'s Mot. at 12 n.20). That remains true; however, in case the Government does decide to seek to introduce the February 9, 2022, statements, and in light of Hines' motion to suppress his post-arrest statements, the Government opposes the motion so the Court may rule on the admissibility of his statements.

These rights can all be waived. To prove a valid waiver of *Miranda* rights, the Government must show, by a preponderance of the evidence, that the defendant relinquished his rights voluntarily and that the defendant had a full awareness of the rights being waived and the consequences of waiving those rights. *See Colorado v. Connelly*, 479 U.S. 157, 167-69 (1986); *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (per curiam). The defendant need not "know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). Rather, the accused need only be aware that his statements may be used against him in future prosecution, and that "he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Id.*

Where the totality of the circumstances reveals an uncoerced choice and the requisite level of comprehension, a court may conclude that *Miranda* rights have been waived. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). A defendant is not required to make any particular statement indicating that he is waiving his *Miranda* rights, nor does he have to execute a written waiver in order to knowingly waive his rights. *See*, *e.g.*, *United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990) (no express statement of waiver is required). Indeed, so long as the *Miranda* warnings were adequate, a defendant's voluntary statement itself demonstrated knowing waiver. *See*, *e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

A statement is not voluntary within the meaning of the Fifth Amendment if it is obtained by "'techniques and methods offensive to due process' or other circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.'" *Oregon v. Elstad*, 470 U.S.

298, 304 (1985) (quoting *Haynes v. Washington*, 373 U.S. 503, 514-15 (1963)). "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined after a careful evaluation of the totality of the surrounding circumstances." *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1987). The critical issue relevant to voluntariness looks to whether the defendant's will was "overborne" by the conduct of law enforcement officers such that his statements cannot be deemed to be the "product of a rational intellect and a free will." *Lynumm v. Illinois*, 372 U.S. 528, 534 (1963) (internal quotation marks omitted). "In applying the totality of the circumstances test, those factors that a court should consider to determine whether an accused's confession is voluntary center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green*, 850 F.2d 901-02. The age of the accused, education level, intelligence, advice regarding constitutional rights, length of detention, repeated and prolonged questioning, and the use of physical punishment are some of the criteria that courts consider when further evaluating the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Compliance with *Miranda*, although not dispositive, is a significant factor weighing in favor of a finding of voluntariness. *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984).

### B.  Discussion

When Hines was arrested on February 9, 2022, the "agents [who arrested him] kept trying to ask [him] questions before reading [him] his rights" and he "declined to answer their questions." (Hines Decl. ¶ 22). Thereafter, "one of the agents read [him his] rights." Hines advised he "was not making any statement" and further "declined to sign the [*Miranda* waiver] form." (Hines Decl.

¶ 23). Agents read the rights to Hines from an Advice of Rights form. (*See* Gov't Ex. G: Advice of Rights Form produced to Hines in discovery). After stating he would not answer questions, and declining to execute a *Miranda* waiver, Hines made several unsolicited statements. He made numerous statements about prison life generally and about the fate of cooperators in prison – including that they are "not welcome in general population" and are the target of "assault" and even murder by "rat hunters." (Def. Ex. 17). Hines makes no allegation that the agents questioned him before he made these statements. Instead, he alleges he "declined to answer" questions. "A spontaneous or volunteered utterance by a suspect, even though in custody and having been subjected to prior questioning, is not the product of custodial interrogation, and is thus not subject to suppression under Miranda." *United States v. Fiseku*, No. 15 Cr. 384 (PAE), 2015 WL 7871038, at *15 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 906 F.3d 65 (2d Cir. 2018), *and aff'd*, 915 F.3d 863 (2d Cir. 2018), *cert. denied* (2019).

Hines glancingly describes his statements to law enforcement as "involuntary." (Def.'s Mot. at 13). But at the time of his arrest, Hines was an adult, and he does not assert he faced any of the onerous law enforcement techniques recognized in the case law as producing involuntary statements. *Green*, 850 F.2d at 902 (citing to "repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights," "physical mistreatment such as beatings," "long restraint in handcuffs," and "other physical deprivations occurred such as depriving an accused of food, water or sleep"). Moreover, Hines had numerous prior arrests and interactions with law enforcement, including his June 14, 2017, arrest, in which he was *Mirandized* and thus "was familiar with police procedures from previous arrests," a factor which this Court has recognized further weighs in favor of voluntariness. *United States v. David Brown*, 16 Cr. 361

(CS) (Transcript of April 7, 2017, suppression hearing) (citing *Toste v. Lopes*, 701 F.Supp. 306, 313 (D. Conn. 1987)). Thus, under the totality of the circumstances, there is no basis to conclude that his statements were anything other than voluntary.

## III.    There Was No Improper Police Influence Before Witness-2's Identification of Hines

Hines next argues that Witness-2's identification of Hines should be suppressed as the product of unduly suggestive identification procedures, and that any in-court identification of Hines by Witness-2 is therefore tainted. (Def. Mot. at 13-14). Hines further argues that any witness identifications made using a "set book" also are unduly suggestive. (Def. Mot. at 15). At a minimum, Hines requests a *Wade* hearing.

Because Hines has not raised a substantial question concerning the reliability of any identification, no hearing is necessary.

### A.  Applicable Law

The Supreme Court has held that "[i]f there is a very substantial likelihood of irreparable misidentification" resulting from a pretrial identification "infected by improper police influence," then "the judge must disallow presentation of the evidence at trial." *Perry v. New Hampshire*, 132 S. Ct. 716, 720 (2012) (internal quotation marks omitted). When a defendant has raised a substantial question concerning improper police influence, district courts may hold a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967). *See Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) ("The purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." (internal quotation marks omitted)). There is, however, no "require[ment] [that] trial courts . . . hold pretrial hearings concerning the suggestiveness of an identification

procedure." *United States v. Ruggiero*, 824 F. Supp. 379, 396 (S.D.N.Y. 1993); *see United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984) (affirming district court's "exercise of its discretion in not holding a pretrial hearing on the issue of suggestiveness," as "[n]o per se rule requires such a hearing").

The burden rests on a defendant to show that an identification is subject to preclusion. *E.g. United States v. Swain*, No. 08 Cr. 1175, 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (collecting cases); *United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 343 (S.D.N.Y. 2014) (defendant only entitled to a *Wade* hearing if he makes a "sufficient pre-trial showing of impropriety"). An evidentiary hearing is not required "where a defendant's allegations are general and conclusory or are based upon suspicion or conjecture." *United States v. Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985); *see also United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989). A district court may decide the motion without a hearing if the moving papers do not create a genuine dispute as to any material fact. *See 2United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992) (affirming the denial of a suppression hearing where "[t]he defense affidavits did not deny or refute the allegations" in the Government's affidavit), *abrogated on other grounds*, *Peck v. United States*, 73 F.3d 1220 (2d Cir. 1995).

When determining whether identification testimony should be precluded, a district court engages in a "sequential inquiry" assessing first "whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." *Abdur Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). If not, "the identification evidence presents no due process obstacle to admissibility, no further inquiry by the court is required, and the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case

is a matter for the jury." *Id.* (internal quotation marks omitted). If the pretrial identification procedure was unduly suggestive, the question becomes whether an in-court identification would be "independently reliable rather than the product of the earlier suggestive procedures." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990); *see Kelly*, 257 F.3d at 133 ("In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability.").

Whether a photo array used for identification is unduly and unnecessarily suggestive, "on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992). "Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive." *United States v. Morgan*, 690 F. Supp. 2d 274, 283 (S.D.N.Y 2010) (citing *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (collecting cases)). In determining whether an array is impermissibly suggestive, courts assess "whether the picture of the accused so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 40-41 (2d Cir. 1986) (internal quotation and alterations omitted).

At the second step, an unduly suggestive identification procedure does not alone require suppression of the identification evidence. *See Manson v. Brathwaite*, 432 U.S. 98, 110–114 (1977). Instead, the court must then determine whether the identification evidence is nevertheless "independently reliable" based on the totality of the circumstances. *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009); *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991) ("Even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances,

it possesses sufficient indicia of reliability."); *see Brathwaite*, 432 U.S. at 114 ("[R]eliability is the linchpin in determining the admissibility of identification testimony.").

Among the factors to be considered are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). No single factor is dispositive. *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir. 1992). Courts have similarly held that an identification is independently reliable when a witness is familiar with a defendant. *See United States v. King*, No. 21-CR-255 (NSR), 2022 WL 5240928, at *3 (S.D.N.Y. Oct. 6, 2022) ("familiarity lowers the likelihood of misidentification."); *see also United States v. Scott*, No. 21 CR. 429 (AT), 2021 WL 4125212, at *2 (S.D.N.Y. Sept. 9, 2021) (when witnesses were familiar with defendant "showing the [witnesses] the photographs amounted to merely confirmatory identifications, which, along with the other circumstances of the identification, create a basis for an independently reliable in-court identification.").

**B. Discussion**

Hines has not raised a substantial question regarding improper police influence with respect to Witness-2's identification.

"In reviewing the composition of a photographic array, 'the principal question is whether the picture of the accused ... so stood out from all the other photographs as to 'suggest to an identifying witness that [the accused] was more likely to be the culprit.'" *United States v. Williams*, 13 Cr. 580 (JMF), 2014 WL 144920, at *2 (S.D.N.Y. Jan. 15, 2014). Here, it is clear from review of the photo array here that Hines's image does not stand out from the others. The photo array

Witness-2 reviewed includes six black and white images of equal size. (Def. Ex. 20). The images are arranged in two rows of three, in the middle of the page, and are equidistant from each other. Each image depicts a youthful, African American male, with short hair, and some facial hair, looking directly at the camera.

While Hines asserts his photograph is different from the other images in the six-pack photo array, because "his face, head and neck are by far the largest depicted," Def. Mot. at 14, courts have rejected arguments that such small distinctions are unduly suggestive. *See United States v. Swain*, No. S4 08 CR. 1175 JFK, 2011 WL 4348142, at *6 (S.D.N.Y. Aug. 16, 2011) (denying motion for *Wade* hearing when six-pack photo array "depict[s] black men of similar age, build, skin tone, haircut, and facial hair," despite defense argument that other differences, including the relative size of the defendant's head, are sufficiently "appreciable as to be unduly suggestive."); *see also United States v. Bautista,* 23 F.3d 726, 731 (2d Cir.1994) ("While it is true that the photograph of [the defendant] is slightly brighter and slightly more close-up than the others, we find that these differences did not render the array suggestive."); *United States v. Eley*, No. 20 CR. 78-3 (AT), 2022 WL 1608068, at *4 (S.D.N.Y. May 20, 2022) ("Although there are some differences between the photographs in terms of facial hair and hairstyle, these minor distinctions alone do not make the array unduly suggestive."); *see also Morgan*, 690 F. Supp. 2d at 283 ("Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive"). The photo array depicts men of similar age, build, skin tone, hair cut, and facial hair. It is plain that the image of Hines was not cropped or enhanced in some way to cause his face, head and neck to stand out. Thus, Hines's assertions are

insufficient to raise a question regarding whether the identification procedure was unduly suggestive.

Hines next asserts without specificity that a "host of other factors that are not addressed in the discovery . . . need to be examined by the Court." (Def. Mot. at 14). However, "mere speculation" about an identification proceeding does not warrant a pretrial hearing. *Swain*, 2011 WL 4348142, at *6; *Eley*, 2022 WL 1608068, at *4 (denying *Wade* hearing even though Government supposedly provided "limited information" about the identification procedure, because the burden is on the defendant to "show that the identification was conducted improperly."); *Williams*, 2014 WL 144920, at *2 (defendant's request for a "hearing to develop a factual record 'from which this Court may divine the appropriateness of the identification procedure[s] employed' . . . is a patently insufficient basis for a hearing").

Nor is there any basis in the record to believe the identification proceeding was suggestive or irregular. Instead, according to the form appended to the six-pack, before showing the photographs, the detective who administered the array told Witness-2, among other things, that "the perpetrator may or may not be among the pictures," then asked whether Witness-2 recognized anyone, and if so, which of the numbered pictures Witness-2 recognized. (Def. Ex. 20 at 1.) Witness-2 signed the statement indicating that the detective had read the instruction to Witness-2. (*Id*.) Indeed, Hines does not dispute that these instructions were read and followed. Nor does Hines offer any other reason to preclude Witness-2's identification, meaning his motion should be denied.

Indeed, even if the Court were to determine that the officer used a means that was unduly suggestive, the Court should still deny Hines' motion to preclude Witness-2's identification. As

24

described above, Witness-2 had a pre-existing relationship with Hines, which supports the conclusion that the identification is "independently reliable" under the second step of the *Wade-Manson* inquiry. *King*, 2022 WL 5240928, at *3; *Scott*, 2021 WL 4125212, at *2.

In a similarly general fashion, Hines also moves to preclude identifications made by witnesses who reviewed "a set book containing numerous photographs." (Def. Mot. at 15). This motion is also meritless. The Government has offered defense counsel the opportunity to review the Government's set book, which is not unduly suggestive. In any event, notes from the Government's witness interviews will be provided with *Jencks Act*, Section 3500 material. Upon production of the 3500 Material, the Government will confer with defense counsel regarding whether it intends to rely on the set book identification of any testifying witness at trial.

## IV.    Hines Lacks Standing to Challenge Most of the Warrants; the Warrants Comply with the Fourth Amendment; and in the Alternative, Law Enforcement Acted in Good Faith in Executing the Warrants

Hines moves to suppress evidence obtained pursuant to five different search warrants: the 2017 ESI Warrant issued by Judge McCarthy (Def. Ex. 11)[8], the 2021 ESI and Facebook Warrant issued by Judge Davison (Def. Ex. 16), the 2017 CSLI Warrant issued by Judge Davison (Def. Ex. 13), the 2017 Facebook Warrant issued by Judge McCarthy (Def. Ex. 5), and the 2022 Facebook Warrant issued by Judge Davison (Def. Ex. 19). Because the defendant has not demonstrated he

---

[8] Due to an apparent scanning error, the Attachment A to the 2017 ESI Warrant originally produced to defense counsel included a duplicate page 2 and was missing page 3. Defense counsel's motion having brought this issue to the Government's attention, the Government provided defense counsel with a complete copy of the 2017 ESI Warrant and the Attachment A on February 10, 2023. *See* Gov't Ex. H. The Government notes the complete Attachment A also was appended to the application for the 2017 ESI Warrant. *Compare* Def. Ex. 10 Attachment A *with* Gov't Ex. H Attachment A.

has standing with respect to most of the data he seeks to suppress, and in any event, the warrants contain probable cause, and are sufficiently particularized and not overbroad, the defendant's motions are without merit. In the alternative, law enforcement relied on the Warrants in good faith.

### A.  Applicable Law

#### 1.  *Standing*

Fourth Amendment rights are personal rights and may not be vicariously asserted. *See United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002). A defendant seeking to suppress evidence based on an alleged Fourth Amendment violation must therefore demonstrate that he had a reasonable expectation of privacy in the location or items searched. *Rakas v. Illinois*, 439 U.S. 128, 162 (1978); *United States v. Padilla*, 508 U.S. 77, 81-82 (1993) (per curiam). In order to meet this standard, the defendant generally must establish at the outset that he had a "property or possessory interest in the place searched or the items seized." *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) (citations omitted); *see also, e.g., United States v. Serrano*, 13 Cr. 58 (KBF), 2014 WL 2696569, at *4 (June 10, 2014).

The burden rests on the defendant to prove the facts necessary to establish that his personal Fourth Amendment rights were violated. *See United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988). That burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted). An attorney's declaration is insufficient to make the requisite showing. *Id.*

Similarly, defendants cannot establish Fourth Amendment standing based on the Government's allegations or evidence. *See, e.g., United States v. Watson*, 404 F.3d 163, 166-67

(2d Cir. 2005) (internal citation omitted) (holding that a defendant does not establish standing sufficient to challenge a search "merely because he anticipate[s] that the Government will link the objects recovered in that search" to him "at trial.").

Finally, this standing requirement applies as well to searches of cell site data—where the defendant must establish ownership or another possessory interest in the phone at the time for which the data is searched—as it does to searches of physical spaces. *See*, *e.g.*, *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (denying a cell site challenge, holding that "Dore does not have standing to assert Fourth Amendment rights in those phone records" because "he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them."); *United States v. Serrano*, No. 13 Cr. 58 (KBF), 2014 WL 2696569, at *7 (S.D.N.Y. June 10, 2014) (denying standing to challenge cell site evidence where "[t]he defendant has not proffered an affidavit that he has a privacy interest in that phone or the data on that phone."). So, too, does it apply to searches of other electronic evidence. *United States v. Lewis*, No. 16 Cr. 786 (NSR), 2018 WL 6241445, at *5 (S.D.N.Y. Nov. 29, 2018) ( "A person has no expectation of privacy in another person's e-mail account.") (quoting *United States v. Lustyik*, 57 F. Supp. 3d, 213, 223 (S.D.N.Y. 2014)).

### 2. *Probable Cause*

A judicial finding of probable cause is afforded significant deference. "A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists . . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (internal citations omitted) (reversing suppression order). Moreover, as

the Supreme Court recently reiterated, "[p]robable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "A judge's probable-cause determination is not overly strict. Presented with a warrant application, the judge must 'simply . . . make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"The quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *Wagner*, 989 F.2d at 72 (quoting *Gates*, 462 U.S. at 235). Moreover, "[p]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Martin*, 426 F.3d at 74 (quoting *Gates*, 462 U.S. at 232). Thus, "[i]n assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Gates*, 462 U.S. at 231). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Such determinations must be approached in a practical way, because "probable cause is a flexible, common-sense standard." *Gates*, 462 U.S. at 231-32; *Texas v. Brown*, 460 U.S. 730, 742 (1983). Additionally, the training and experience of law enforcement agents bear significantly on probable cause determinations. *Gates*, 462 U.S. at 232. Inferences drawn by law enforcement

28

agents based on facts known to them, the totality of the circumstances, and their training and experience can all support a probable cause finding. *Id.* at 231-32.

Once a warrant has been issued by a judge and executed, the duty of a court reviewing a magistrate judge's probable cause determination on a motion to suppress is far more limited: its task is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The issuing magistrate's decision is "entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks omitted).

Indeed, the magistrate's "finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 232, 236). Thus, as described in *Clark*, the "task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Clark*, 638 F.3d at 93 (quoting *Gates*, 462 U.S. at 238).

### 3. Particularity

To satisfy the particularity requirement, a warrant must: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*,

29

858 F.3d 71, 99 (2d Cir. 2017) (internal quotations omitted). "The Fourth Amendment does not require a perfect description of the data to be searched and seized, however," and "[s]earch warrants covering digital data may contain 'some ambiguity. . . .'" *Id.* (quoting *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013)). "A search warrant does not necessarily lack particularity simply because it is broad." *Id.* at 100. Rather, the requirement is satisfied if the warrant, including its attachments, enables the executing officer to ascertain and identify with reasonable certainty those items authorized to be searched and seized. *See Groh v. Ramirez*, 540 U.S. 551, 557-59 (2004); *United States v. Rosa*, 626 F.3d 56, 58 (2d Cir. 2010).

A warrant that calls for seizure of "all evidence" of a given crime or crimes is sufficiently particular if it offers a list of illustrative items. *See United States v. Riley*, 906 F.2d 841, 843-45 (2d Cir. 1990) (warrant containing list of illustrative items to seize was sufficiently particular notwithstanding provision allowing, as well, seizure of "other items that constitute evidence of the offenses" identified); *United States v. Young*, 745 F.2d 733, 759-60 (2d Cir. 1984) (warrant allowing seizure of listed items plus "other evidence of" the crimes specified was sufficiently particular); *Lustyik* 57 F. Supp. 3d at 227-28 (warrant permitting seizure of all "evidence, fruits, or instrumentalities" of specified crimes was sufficiently particular because it contained "an illustrative list of items to be seized," even though illustrative list was preceded by phrase "including but not limited to"); *United States v. Jacobson*, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014) ("The reference to particular offenses and the use of an illustrative list of items to seize sufficiently particularized the warrants.").

30

*4.  Overbreadth*

The probable cause and particularity requirement intersect in the doctrine of overbreadth. "[A warrant] is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446. Thus, broad language in a search warrant may be justified if the criminal methods are extensive and the criminal activity is pervasive. For example, "[w]hen the criminal activity pervades [an] entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements." *Ulbricht*, 858 F.3d at 102 (quoting *U.S. Postal Service v. C.E.C. Services*, 869 F.2d 184, 187 (2d Cir. 1989)).

In this context, "it is important not to confuse the separate context of the seizure of an item . . . with the search itself." *United States v. Ulbricht*, No. 14-CR-68 KBF, 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014), aff'd, 858 F.3d 71 (2d Cir. 2017). That is:

> It has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized. For instance, warrants have long allowed searching a house high and low for narcotics—indeed, it is rare that drug dealers point out the hidden trap in the basement—or reviewing an entire file cabinet to find files that serve as evidence of money laundering activity, which might be intermingled with files documenting lawful and irrelevant activity.

*Id.*; *accord Riley*, 906 F.2d at 845.

Applying this rationale to the context of electronic devices, courts have "routinely upheld the seizure and copying of hard drives and other storage devices in order to effectuate a proper search for the categories of documents or files listed in a warrant." *In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxx@gmail.com*

*Maintained at a Premises Controlled by Google, Inc.* ("*In re Google Warrant*"), 33 F. Supp. 3d

386, 392 (S.D.N.Y. 2014) (collecting cases).

This is because "[i]n the case of electronic evidence, which typically consists of enormous

amounts of undifferentiated information and documents, . . . a search for documents or files

responsive to a warrant cannot possibly be accomplished during an on-site search." *Id.*; *accord*

*United States v. Metter*, 860 F. Supp. 2d 205, 214 (E.D.N.Y. 2012) ("off-site imaging is a necessity

of the digital era"). As the Second Circuit has recognized, "[i]t is comparatively commonplace for

files on a computer hard drive to be so intermingled that they cannot feasibly be sorted on site"

and thus "the creation of mirror images for offsite review is constitutionally permissible in most

instances, even if wholesale removal of tangible papers would not be." *United States v. Ganias*,

755 F.3d 125, 135 (2d Cir. 2014), *rehearing en banc granted* 791 F.3d 290 (June 29, 2015); *see*

*also* Fed. R. Crim. P. 41(e)(2)(B).

### 5. *Manner of Search*

"[I]t is generally left to the discretion of the executing officers to determine the details of

how best to proceed with the performance of a search authorized by warrant." *Dalia v. United*

*States*, 441 U.S. 238, 257 (1979). For searches authorizing the seizure of electronically stored

information, "the Fourth Amendment does not require a search warrant to specify computer search

methodology." *United States v. Bowen*, 689 F. Supp. 2d 675, 681 (S.D.N.Y. 2010). Accordingly,

courts "reviewing challenges to searches of electronically stored information have declined to

require any particular protocols such as the use of specific search terms or methodologies." *United*

*States v. Lebovits*, No. 11 Cr. 134, 2012 WL 10181099, at *22 (E.D.N.Y. Nov. 30, 2012).

### 6.  *Good Faith*

Even if a warrant lacks probable cause or particularity, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144; *see also Rosa*, 626 F.3d at 64, 66. As a result, exclusion should be a "last resort" rather than a "first impulse." *Id.* at 64 (citations omitted).

Thus, suppression will generally not be warranted where the evidence at issue was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). Although the burden is on the Government to establish good faith, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* (citations omitted) (internal quotations omitted); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting that the "issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause").

Accordingly, in light of this exception, "the Supreme Court [has] strongly signaled that most searches conducted pursuant to a warrant would likely fall within [the] protection" of the good faith exception. *Clark*, 638 F.3d at 100 (citing *Leon*, 468 U.S. at 922). Indeed, there are only four narrow circumstances in which the good-faith exception does not apply: "(1) where the

issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable". *Id.* (quotation marks and citations omitted).

The "good faith" exception applies to the particularity and breadth requirements of the Fourth Amendment as well. *E.g. United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at *11 (S.D.N.Y. Dec. 21, 2022) ("if the Cell Site Warrant were overbroad to any extent, the good faith exception would apply."); *accord United States v. Jones*, 43 F.4th 94, 111–12 (2d Cir. 2022).

### B. Discussion

#### 1. *Hines Lacks Standing to Challenge the 2017, 2021, and 2022 Facebook Warrants, and the 2017 CSLI Warrant*

In his declaration, Hines claims law enforcement seized "my phone" on June 14, 2017. Hines Decl. ¶ 16. As to the 2017 ESI Warrant (Def. Ex. 11) and portion of the 2021 ESI and Facebook Warrant (Def. Ex. 16) that pertains to the Hines Phone, he has provided the necessary sworn evidence to establish that his personal Fourth Amendment rights are at issue, and has standing to challenge the Government's seizure and subsequent searches. But that is not true as to the other warrant Hines challenges. His declaration includes no information that any of the Facebook accounts identified in the 2017 Facebook Warrant, 2021 ESI and Facebook Warrant, or 2022 Facebook Warrant, belong to him or that he otherwise has a recognized expectation of privacy in them. Similarly, he provides no facts about his possessory interest in the 1070 Number or the 8930 Number that are some of the numbers subject to the 2017 CSLI Warrant. Without a factual declaration asserting a possessory interest in the data he seeks to suppress, Hines lacks

standing to challenge the Government's searches related to those items, and his motion to suppress evidence recovered from those searches should be denied. *Montoya-Escheverria*, 892 F. Supp. at 106.

### 2. The 2017 ESI Warrant and 2021 ESI and Facebook Warrant are Sufficiently Particular, are Not Overbroad, and Are Supported by Adequate Probable Cause

#### a.  Particularity and Overbreadth

Hines complains that the 2017 ESI Warrant and 2021 ESI and Facebook Warrant are overly broad and insufficiently particular. (Def.'s Mot. at 15–26). To the contrary, the 2017 ESI Warrant describes the offenses as to Hines, narcotics conspiracy, 21 U.S.C. §§ 841 and 846, and racketeering conspiracy, 18 U.S.C. § 1962(d) (Gov't Ex. H at 1 & Attachment A at 3-4); the place to be searched, the Hines Phone (*id.* Attachment A at 2); and the items to be seized by their relation to those designated crimes (seven categories of data related to narcotics trafficking, and seven categories of data related to racketeering). (*Id.* Attachment A at 3-5). In addition, the affidavit in support of the 2017 ESI Warrant (Def. Ex. 10) attaches and incorporates by reference the Southside Indictment, charging the defendant with participating in narcotics and racketeering conspiracies. The affidavit further describes the use of telephones by Hines in furtherance of narcotics trafficking, including by quoting intercepted wire communications. (Def. Ex. 10 ¶ 10(f)).

Similarly, the 2021 ESI and Facebook Warrant describes the offenses as to Hines, narcotics conspiracy, 21 U.S.C. § 846, racketeering conspiracy, 18 U.S.C. § 1962(d), murder in aid of racketeering, 18 U.S.C. § 1959, murder in furtherance of drug trafficking, 21 U.S.C. § 848, and murder through use of a firearm, 18 U.S.C. § 924(j) (Def. Ex. 16 at 1 & Attachment A at 1); the places to be search, materials recovered from the Hines Phone (*Id.*) and data produced by Facebook for "YM Sbe" (*id.*); and the items to be seized by their relation to those designated crimes. (*Id.*

Attachment A at 1-3). The affidavit in support of the 2021 ESI and Facebook Warrant attached as exhibits both the 2017 ESI Warrant, and the 2017 Facebook Warrant. (Def. Ex. 16 Exs. A and B). In addition, the warrant application described Hines's 2019 guilty plea to racketeering offenses (Def. Ex. 15 ¶ 15), communications indicating Hines ordered Little's murder (*id*. ¶ 16), and information from a cooperating witness that Hines ordered Little's murder. (*Id.* ¶ 17).

Hines's arguments that the warrants are insufficiently particular and overly broad overlook simple facts in the warrants themselves. While he claims that the 2017 ESI Warrant does not include a list of co-conspirators, (Def. Mot. at 24), *thirteen* individuals, the narcotics trafficking and racketeering activities of whom are described in the affidavit, are identified in the Attachment A to the warrant. Hines's related argument that victims and other non-coconspirator individuals are not identified by name does not render the warrant insufficiently particularized: he cites no case law to support the assertion that a warrant must list every such individual, and indeed that argument flies in the face of clear Second Circuit precedent. *See Ulbricht*, 858 F.3d at 99 ("a search warrant does not necessarily lack particularity simply because it is broad."). The absence of temporal limitation, (Def. Mot. at 25), is similarly unavailing. *See United States v. Kidd*, 386 F. Supp. 3d 364, 375 (S.D.N.Y. 2019) ("In fact, courts uphold search warrants that lack any sort of temporal limitations"); *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at *11 (S.D.N.Y. Feb. 25, 2013) ("For overbreadth and particularity purposes, no controlling authority requires a specific time frame."); *United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 1017533, at *8 (S.D.N.Y. Mar. 2, 2019) (finding warrant meets particularity requirement where it "limits the scope of the search to evidence of particular federal crimes," though it did not include a temporal limitation).

36

Finally, Hines's argument that the 2017 ESI Warrant permits "unrestricted searches" to numerous categories of data, (Def. Mot. at 24), is simply incorrect. The 2017 ESI Warrant plainly limits authority to review the listed categories of data only as they relate to the Subject Offenses. (Gov't Ex. H Attachment A at 3, 4). While the 2017 ESI Warrant periodically uses the terms "[a]ll files" or "[a]ll bank records," those terms are tied to "evidence, fruits, and instrumentalities" of the Subject Offenses. (Gov't Ex. H Attachment A at 3, 4). That language is wholly consistent with the Second Circuit's guidance that warrants that call for seizure of "all evidence" of a given crime or crimes is sufficiently particular if it offers a list of illustrative items. *Riley*, 906 F.2d at 843-45. Hines's identical arguments with respect to the 2021 ESI and Facebook Warrant fail for the same reasons. Contrary to Hines's assertion, that warrant did not permit generalized rummaging for "organization members." (Def. Mot. at 25). It defined the organization as the "Southside Gang, active in Newburgh, New York, from in or about 2014 through in or about June 14, 2017. (Def. Ex. 16 Attachment A at 1).

Accordingly, Hines's motions based on the particularity and breadth of the 2017 ESI Warrant and 2017 ESI and Facebook Warrant should be denied.

b.  Manner of Search

Hines' argument that the warrants are overly broad because of the manner of search they authorize is similarly incorrect.  Hines cites no support for the proposition that it was improper for the 2021 ESI and Facebook Warrant to permit "unbounded key word searches with no memorialization." (Def. Mot. 26). That proposition is wrong; the Second Circuit "[has] not required specific search protocols or minimization undertakings as basic predicates for upholding

digital search warrants, and [the Circuit] do[es] not impose any rigid requirements in that regard at this juncture." *Galpin*, 720 F.3d at 451.

Consistent with *Galpin*, and with the principle that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant," *Dalia*, 441 U.S. at 257, courts in this District have repeatedly declined to "impose *ex ante* restrictions pertaining to the later execution of [a] warrant," *In re Google Warrant*, 33 F. Supp. 3d at 397, and have declined to find searches conducted without such protocols to be impermissible, *United States v. Romain*, No. 13 Cr. 924 (RWS), 2014 WL 6765831, at *9 (S.D.N.Y. Dec. 1, 2014). *See also Lustyik*, 57 F. Supp. 3d at 229. Numerous courts in this District have recognized that, "while the warrant must state with particularity the materials to be seized from a computer, the warrant need not specify *how* the computers will be searched." *United States v. Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *37 (S.D.N.Y. Apr. 4, 2007); *see id.* (observing that "[t]his is the view of the vast Majority of courts to have considered the question" and collecting cases). Thus, the absence of search protocols or a memorialization requirement does not render the 2021 ESI and Facebook Warrant insufficiently particularized.

    c.   Probable Cause

Somewhat off-handedly, Hines also argues the 2017 ESI Warrant and the 2021 ESI and Facebook Warrant lack probable cause. (Def. Mot. at 28-29, referring to Def. Exs. 11 and 16). Hines appears to confuse the standard for an application in support of a warrant with the warrant itself. "Presented with a warrant *application*," a judge must make a "practical, commonsense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found

in a particular place."' *Martin*, 426 F.3d at 74 (emphasis added). However, there is no requirement that a *warrant* itself must describe the probable cause for its issuance.

The *applications* for the 2017 ESI Warrant and 2021 ESI and Facebook Warrant each included as an attachment the Southside Indictment charging Hines with participating in narcotics and racketeering conspiracies. The Southside Indictment alone permitted the issuing judge for each warrant to conclude there was probable cause to believe Hines participated in the offenses charged in the Indictment. In addition, each application described the place to be searched, and the reasons to believe the places to be searched would include evidence of crimes. Thus, Hines's motion to suppress the 2017 ESI Warrant and 2021 ESI and Facebook Warrant for lack of probable cause also should be rejected.

### 3. The 2017 CSLI Warrant is Sufficiently Particular and is Not Overbroad

Hines next argues the 2017 CSLI Warrant is overbroad because it permits the collection of toll records and cell site location information for the time period June 14, 2016, to June 14, 2017. (Def. Mot. at 29-30). Even if Hines establishes standing to challenge the 2017 CSLI Warrant, his motion should be denied.

The application for the 2017 CSLI Warrant attached as an exhibit the Southside Indictment, charging Hines with participating in a racketeering conspiracy between in or about 2015 and in or about May 2017 and a narcotics conspiracy between in or about 2014 and in or about June 2017. (Def. Ex. 12 ¶ 9 & Ex. 1). The application further attributed Target Cellphones 9 and 17 to Hines, and described intercepted communications in which Hines used Target Cellphones 9 and 17 in furtherance of narcotics trafficking in March 2017. (Def. Ex. 12 ¶¶ 4, 11(j), 15). The application further described the ways in which other members of the racketeering and narcotics trafficking

conspiracies used wire and electronic communications in furtherance of narcotics trafficking between 2016 and April 2017, and quoted numerous intercepted communications. (*Id.* ¶¶ 11-15).

In short, the application for the 2017 CSLI Warrant described "a course of criminal conduct that extended over years," *United States v. Ray*, 541 F. Supp. 3d 355, 396 (S.D.N.Y. 2021), between 2014 and 2017. Thus, there was probable cause to seize cell site location information and toll records for any period of time within that years long course of conduct. *See United States v. Nejad,* 436 F. Supp. 3d 707, 729 (S.D.N.Y. 2020) ("[C]ourts in this Circuit have recognized that '[t]he complexity and duration of the alleged criminal activities' may 'render a time frame less significant than in a case that required a search for a small set of discrete items related to one or only a few dates.'").

As such, Hines' motion to suppress evidence obtained via the 2017 CSLI Warrant is without merit and should be denied.

### 4. *The Challenged Facebook Warrants Were Supported by Probable Cause and Are Sufficiently Particularized*

Hines asserts the 2017, 2021, and 2022 Facebook Warrants are insufficiently particularized, and lack probable cause. (Def. Mot. at 30-32). Even if Hines establishes standing to challenge the Facebook Warrants, his motion should be denied.

 With respect to the 2017 Facebook Warrant, Hines argues the application cites to "several ambiguous postings" on his accounts. (Def.'s Mot. at 30–31). As an initial matter, the application for the 2017 Facebook Warrant first described the affiant's eight years of experience investigating gangs, acts of violence, and narcotics trafficking. (Def. Ex. 4 ¶ 1). The application then described the Southside enterprise, and the FBI agent's conversations with confidential sources with knowledge of Southside, including Southside's narcotics trafficking and violent rivalry with

another gang, YTMG. (*Id.* ¶¶ 8-11). The application further described multiple acts of violence with specificity (*Id.* ¶ 11). Thereafter, the application quoted numerous postings from the YM Sbe account. (*Id.* ¶ 12(a)).

According to Hines, the affiant for the 2017 Facebook Warrant engaged in "unfettered interpretation." (Def. Mot. at 30). However, interpreting most of the quoted postings does not require the affiant's years of specialized knowledge and experience. For example, on June 1, 2016, the day members of YTMG were federally indicted on narcotics conspiracy charges, YM Sbe posted that he was "Duckin indictments & getting money." (Def. Ex. 4 ¶ 12(a)). Similarly, on March 18, 2016, the day after a shooting also described in the application (¶ 11(c)), YM Sbe posted, "told my n***** no leg shots." (*Id.* ¶ 12(a)). The only marginally ambiguous post quoted in the application was interpreted with the aid of a confidential source, who the agent describes as having defined the term "lack" as meaning to be without a firearm. (*Id.*).

Hines' claim that these and other postings "does not lead to the inexorable conclusion that Mr. Hines was committing specific criminal acts in conjunction with members of the Southside gang" misinterprets the law. Judge McCarthy's role was to consider the totality of the facts in the Warrant affidavit together. *See, e.g.*, *Gates*, 462 U.S. at 245 n. 14 (criticizing the dissent's "line-by-line scrutiny" which is "inappropriate in reviewing [the] magistrate's decisions"). Hines' argument invites speculation about potentially innocent explanations for the postings. However, "the Supreme Court has 'consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *United States v. Weaver*, 9 F.4th 129, 140 (2d Cir. 2021). "[P]robable cause is not a high bar," *Wesby*, 138 S. Ct. at 586, and not subject to the "fine resolution of conflicting evidence" applicable in other legal proceedings. *Gerstein v. Pugh*, 420 U.S. 103,

41

121 (1975). When reviewing the totality of the factual assertions in the application for the 2017

Facebook Warrant, it is clear that there was a "substantial basis" for Judge McCarthy's

determination of probable cause. [9]

Finally, Hines argues that the 2017 Facebook Warrant is insufficiently particularized

because it permits for review of conversations among "target subjects." (Def. Mot. at 31). This

argument again ignores the fact that review of the enumerated categories of data was limited to

"evidence, fruits, and instrumentalities" of identified crimes. (Def. Ex. 5, Attachment A, Section

III). Thus, the 2017 Facebook Warrant was sufficiently particularized. *See Ulbricht*, 858 F.3d at

99.

For the same reasons, and for the reasons described above with respect to search protocols,

there is no basis to suppress the Facebook evidence seized pursuant to the 2021 ESI and Facebook

Warrant or the 2022 Facebook Warrant for overbreadth or lack of particularity.

Accordingly, Hines's motion to suppress the 2017 Facebook Warrant, 2021 ESI and

Facebook Warrant, and the 2022 Facebook Warrant, should be denied.

*5. In the Alternative, Law Enforcement Relied on the Warrants in Good Faith*

As described above, the warrants Hines challenges all complied with the Fourth

Amendment. But even if they did not, law enforcement properly relied on those warrants in good

faith. Hines does not even cite to the law regarding good faith reliance; to the extent he did, it

---

[9] Hines also asserts that because the warrant form for the 2021 ESI and Facebook Warrant does not include probable cause findings, the warrants are invalid. (Def. Mot. at 28–29 (citing Def.'s Mot., Ex. 16)). As described *supra*, the Government respectfully suggests that Hines is confused: Exhibit 15 is the "written finding of probable cause or articulation of any finding supporting probable cause," (Def. Mot. at 28), for those warrants. The lack of probable cause findings in the 2021 ESI and Facebook Warrant form is not a basis to suppress the warrant.

would of course be fatal to his motion. He does not assert that the relevant magistrate judges were "knowingly misled"; that the judges "wholly abandoned his or her judicial role"; that the affidavits were "so lacking in indicia of probable cause as to render reliance upon it unreasonable"; or that the warrants were "so facially deficient that reliance upon it is unreasonable." *Clark*, 638 F.3d at 93. There is no reason to suggest the challenged warrants were issued and executed in anything other than good faith. As a result, there would be no basis to suppress the relevant evidence even if the warrants were inconsistent with the Fourth Amendment in some way.

## V.   There is no Basis to Suppress Recorded Jail Calls

Finally, Hines challenges the Government's seizure of calls he made while incarcerated. (Def. Mot. at 32–33). Hines cites to inapposite caselaw regarding the requirement of a judicial order to intercept communications pursuant to Title III. (*Id.*) The challenged calls and videos were not intercepted pursuant to Title III, but were instead recorded on consent while Hines was incarcerated at various correctional institutions. Hines does not assert he was unaware his calls were being recorded. Nor could he, with any veracity. Each of the calls is preceded by a message stating that it was being recorded. As Hines acknowledges (Def. Mot. at 32), his challenge is thus meritless. *E.g. United States v. Workman*, 80 F.3d 688, 693-94 (2d Cir. 1996); *United States v. Willoughby*, 860 F.2d 15, 19-20 (2d Cir. 1988).

43

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that Hines's motion should be denied without a hearing, because his arguments are meritless, he lacks standing to raise them, or they are moot.[10]


Dated:  New York, NY
        February 13, 2023


                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney for the
                                    Southern District of New York


                            By:     /s
                                    Lindsey Keenan
                                    Samuel Raymond
                                    Assistant United States Attorneys
                                    (212) 637-1565/6519

---

[10]  Hines requests the opportunity to file "additional motions, particularly related to discovery issues," in the future in part because the Government has produced substantial amounts of discovery marked as sensitive under the governing protective order. (Def. Mot. at 33–34). The Government produced those materials as Sensitive given the obvious safety concerns in this murder case against an admitted gang leader. The Government has worked with, and expects to continue to work with, defense counsel with respect to discovery in a collaborative manner.

44