

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

October 6, 2023

**BY ECF**

The Honorable Cathy Seibel
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

    Re:    *United States* v. *Ardae Hines*, 22 Cr. 42 (CS)

Dear Judge Seibel:

    The Government respectfully submits this letter in advance of the sentencing in this matter, currently scheduled for October 13, 2023, for defendant Ardae Hines, for charges of conspiracy to commit murder in aid of racketeering and narcotics distribution, and in response to Hines's September 29, 2023 sentencing submission ("Hines Sentencing Memo").

    In 2016, Hines was a leader of the brutal street gang Southside. Members of the gang flooded the streets of the City of Newburgh with deadly narcotics, and even more dangerously, terrorized innocent civilians and rival gang members through a hail of gunfire. In August of 2016, this Office had recently arrested ten members of Southside's rival gang YTMG, and Southside had few rivals encroaching on its territory. But after Deandric Little, a drug dealer with another crew and with whom Hines had personal beef, came to his putative domain, the defendant could not accept it. Instead of doing his own dirty work, he assigned it to a junior member of the gang: Devin Isaac, just 17 years-old at the time. They agreed that if Little returned to Southside territory that day, Isaac would shoot him. When Little, accompanying another Southside member, arrived at South Street and Chambers Street, Hines and Isaac put their plan in motion. Hines argued with the other southside member until Isaac was ready; Hines turned to Isaac, nodded, and Isaac fired a gunshot into Deandric Little's back. Little died of his injuries later that night, identifying Hines as his killer shortly before he expired.

    For this heinous crime, the defendant faces a Guidelines sentence of 30 years' imprisonment. The Government respectfully submits that a sentence totaling 30 years for both the defendant's prior, related conviction for racketeering and narcotics conspiracy, and the instant offense, is the only sentence sufficient to comply with the applicable Section 3553(a) factors. In particular, such a sentence appropriately accounts for the seriousness of the offense, the need to protect the public from Hines, to deter Hines and others, and the need to avoid unwarranted sentencing disparities. In order to impose such a sentence, the Government requests that the Court

impose a sentence of thirty years to run concurrent with the defendant's sentence in *United States v. Hines*, 17 Cr. 364 (CS), starting on June 14, 2017, the date of the defendant's federal arrest in that case.[1]

## Background

The facts relevant to this case are well known to the Court. From at least 2014 to at least June 2017, a Newburgh street gang called Southside was engaged in racketeering activity, including acts of violence and the distribution of narcotics. Participation in criminal activity, particularly violence against other gang members, was important for elevating members' status and reputation within Southside. Southside's primary base of operations was the neighborhood surrounding the intersection of South and Liberty Streets in Newburgh. (*See* PSR ¶ 10).

Southside members used violence, including shootings and robberies, to defend drug turf against rival gang members, including members of a rival Newburgh gang known as the Yellow Tape Money Gang ("YTMG"), which primarily operated in the vicinity of William and Hasbrouck Streets, about a mile south of Southside territory. The defendant played a critical role in the ongoing conflict between the gangs, including through posting inflammatory Facebook messages, (*see* PSR ¶¶ 27, 34 in 17 Cr. 364 (CS)), and through personally participating in violent acts in YTMG territory. (*See* PSR ¶ 14). YTMG members were arrested in June 2016 and charged in *United States v. Gayle, et al.*, 16 Cr. 361 (CS). (*See* PSR ¶ 11).

In July 2016, tensions began to rise between the defendant and members of a group in Newburgh called the "Breadwinners." The Breadwinners dealt drugs together and made rap music. The Breadwinners were not a gang like Southside – members of Southside could be members of the Breadwinners, and certain members of the Breadwinners could sometimes sell drugs in Southside territory. (*See* PSR ¶¶ 16–17). Tensions were particularly high between the defendant and one of the Breadwinners, Deandric Little, a/k/a "Moolah." Little, who was released from prison that month, had an ongoing dispute with the defendant over a romantic relationship and Little's comparative success as a drug dealer. (*See* PSR ¶ 17).

On August 1, 2016, the defendant asked "CW-1," who was a member of both Southside and the Breadwinners, for assistance renting a car. When CW-1 refused, the defendant accused CW-1 of trying to impress Little, and declared that Breadwinners were not allowed in Southside territory. CW-1 and the defendant argued about that prohibition. For the rest of the day, CW-1 periodically left Southside territory and then returned, sometimes with Little. When CW-1 saw the defendant, the two argued, including nearly having a physical altercation. During at least one of those arguments, CW-1 gestured to a gun in his waistband to threaten the defendant. (*See* PSR ¶ 18).

---

[1] As set forth herein and in accordance with information provided by the Bureau of Prisons, to achieve this result, the Court would enter judgment imposing a sentence of 25 years, 9 months, and 18 days to run concurrent with the defendant's sentence in 17 Cr. 364 (CS).

During one period when CW-1 was not in Southside territory, the defendant agreed with others, including 17-year-old Southside member Devin Isaac, a/k/a "Seven," to shoot and kill Little if he was found in Southside territory. The defendant told Isaac that Little was a cross-town rival, and instructed Isaac to kill Little with a gun. (*See* PSR ¶ 19). Later that day, CW-1 returned with Little to Southside territory. CW-1 and Little approached the defendant and other Southside members standing on the street. The three men began arguing, and CW-1 and the defendant began to push each other. The defendant shouted that CW-1 "could get a fair one," meaning a fistfight, but that anyone else would be shot. A few seconds later, the defendant nodded to the side, past where Little was standing, and in response, Isaac, who had come out of a deli across the street during the argument, shot Little in the back. Little later died of his injuries. (*See* PSR ¶ 20).

Isaac became a fugitive after the murder, and was ultimately arrested in September 2016. While he was incarcerated, the Government attempted to interview Isaac, who refused to provide information. Instead, a few weeks later, Isaac mailed a letter to an associate, instructing the associate to take a photograph of the letter and text the photograph to the defendant. In that letter, Isaac confirmed his criminal agreement with the defendant, confirmed he had refused to provide information to law enforcement, and demanded money. (*See* PSR ¶ 21). Isaac ultimately pleaded guilty to manslaughter charges in connection with Little's murder and was sentenced to 18 years' in state prison.

As the Court knows well, Hines continued to lead Southside after the murder, though he frequently and publicly denied on Facebook having any role in the murder. Among other acts, after racketeering charges were unsealed against members of YTMG in September 2016, the defendant posted to Facebook about snitches, and also sold heroin for resale to Southside member William Fennell in March 2017. (*See* PSR ¶¶ 27, 34 in *United States v. Hines*, 17 Cr. 364 (CS)).

## Procedural History

On June 14, 2017, Hines was arrested on the original Southside indictment, 17 Cr. 364(CS). He has been incarcerated ever since. He pleaded guilty in that case to racketeering and narcotics charges, and on July 31, 2019, this Court sentenced him to 15 years' imprisonment. In February 2022, the defendant was charged in the instant case with murder charges, including murder in aid of racketeering, murder in connection with a drug crime, and murder through the use of a firearm.

In January 2023, the defendant moved to suppress various categories of evidence. (Dkt. Nos. 20–24). The Government opposed those motions. (Dkt. Nos. 24, 28). The Court heard argument on April 4, 2023, mostly denying the defendant's motions. (Dkt. Minute Entry dated April 4, 2023). At that conference, the Government noted on the record that while it had previously made a plea offer to the defendant, the defendant had rejected the offer, and the Government would make no more plea offers after the filing of the motions *in limine*. Before filing of such motions, the Government extended another plea offer, which the defendant ultimately accepted. On May 10, 2023, the defendant waived indictment, and pleaded guilty pursuant to a plea agreement to Superseding Information S1, charging the defendant with one count of substantive distribution of heroin in or about August 2016, in violation of 21 U.S.C. § 841(b)(1)(C), and one count of

The Honorable Cathy Seibel
October 6, 2023
Page 4 of 8

conspiracy to commit murder in aid of racketeering on or about August 1, 2016, in violation of 18 U.S.C. § 1959(a)(5). (*See* PSR ¶¶ 1–3). As part of his guilty plea, Hines admitted to his participation in the murder of Deandric Little.

## Guidelines Calculation

Both the Government's plea agreement with the defendant (the "Plea Agreement") and Probation calculated Hines' total offense level as 42 for the two counts: the murder guideline of 43 for the murder of Deandric Little, with two units added because the defendant used a person less than 18 years of age to commit the offense, and three points subtracted for acceptance of responsibility. (*See* PSR ¶¶ 29–53).

Both the Plea Agreement and Probation calculated that the defendant has 12 criminal history points, resulting in a Criminal History Category of V. (PSR ¶¶ 57–65).

As a result of these calculations, the parties and the PSR agree that the Guidelines Range is 360 months to life imprisonment, with a statutory maximum term of 360 months' imprisonment. (PSR ¶ 120). Probation recommends a sentence of 285 months' imprisonment, under 24 years', based on its conclusion that Hines will not receive credit for time he has already served for the sentence this Court imposed in 17 Cr. 364.

## PSR Objections

The defendant makes three objections to the PSR. Hines Sentencing Memo at 17. The Government consents to the following changes to the PSR in response to the defendant's requests:

The Government respectfully submits that the Court amend paragraph 12 of the PSR to conform to the 2019 PSR, and consistent with the defendant's proposal: "ARDAE HINES was a leader and a primary drug supplier to the Southside Gang. HINES was intercepted on a wiretap involving a drug transaction and payment for drugs. He was also intercepted on a separate wiretap discussing a drug transaction and drug prices. In August 2016, HINES dealt quantities of heroin. HINES also redirected customers to other co-conspirators when he was unavailable or did not have drugs for sale."

The Government respectfully requests that the Court amend paragraph 19 of the PSR to read: "On or about August 1, 2016, HINES agreed with other members of Southside, including 17-year-old Southside member Devin Isaac, a/k/a 'Seven,' to shoot and kill Little if he was found in Southside territory. HINES informed Isaac that Little was a cross-town rival and instructed Isaac to kill Little with Isaac's gun."

The Government respectfully requests that the Court amend paragraph 76 in line with Hines's statements about his family's living situation.

## Applicable Law

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez* v. *United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh* v. *United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2). To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

## The Court Should Impose a Sentence Totaling 30 Years' Imprisonment for Hines' Crimes

The Government respectfully submits that consideration of the Section 3553(a) factors weigh in favor of a total sentence 30 years for his two federal cases, which encompass the defendant's participation in the Southside enterprise and the murder of Deandric Little in furtherance thereof. In particular, the nature and circumstances of the crimes, the need to protect the public, the need for both specific and general deterrence, the need to avoid unwarranted sentencing disparities, and the particular characteristics of this defendant all weigh in favor of the Guidelines sentence.

*Seriousness of the Offense*

On August 1, 2016, the defendant agreed to murder Deandric Little, his romantic and drug dealing rival, over frivolous issues like drug territory and gang authority. Murder is the most serious crime an individual can commit; in many ways, though, Hines' plot to kill Little was especially egregious. For instance, instead of performing his own dirty work, the defendant convinced a juvenile gang member over whom he had authority to carry out the murder, thereby consigning then 17 year-old Devin Isaac to a lengthy criminal sentence. This agreement was in no way an aberration, but instead was the culmination of the defendant's proud leadership of a violent street gang with two other murders to its name. A gang that frequently used juvenile and other young gang members to carry out acts of violence and drug sales. And his subsequent conduct was little better, including posting inflammatory messages on social media and dealing heroin in 2017. Hines' role in this terrible murder, including in recruiting Isaac to shoot Little, sets him apart from many other defendants, including many in the Southside case. The seriousness of his conduct merits a sentence of a total of 30 years' imprisonment.

*Specific and General Deterrence*

A 30 year sentence is further needed to specifically deter this defendant from committing additional crimes when he is eventually released. The defendant's record leading up to the instant offenses is replete with criminal activity, ranging from selling narcotics to illegal discharge of a firearm to grand larceny. And despite the frequent arrests and jail time the defendant faced, he was undeterred, leading a violent street gang, dealing drugs, and ordering a murder. These circumstances require a lengthy prison sentence to specifically deter Hines from further crimes.

General deterrence is another important consideration in this case. The defendant's leadership of Southside and the havoc that gang wreaked was a major contributor to a spike in violent activity in a city plagued by violence. Imposing a lengthy sentence on the defendant would send a strong message to the community that violent crime in Newburgh will result not only in serious federal charges, but also significant consequences.

*The Need to Avoid Unwarranted Sentencing Disparities*

An aggregate 30 year sentence is also appropriate given the other sentences this Court has imposed in the YTMG and Southside cases. The Government carefully considered the relative culpability of the defendants across both cases. Hines' conduct here, including his agreement to murder Little and instructions to a juvenile member of the gang to carry out his wishes, was just as or more serious as that of Skylar Davis and Tyrin Gayle, both of whom the Court sentenced to 30 years.

Southside member Skylar Davis killed Samuel Stubbs, and then participated in a series of dizzying acts of violence and shootings. His fearsome reputation allowed him cachet within Southside, which he exercised by leading the gang. But Davis was 18 when he committed those acts; the defendant was 28 when he committed the instant offense. And while Davis personally committed his violent acts, Hines instructed a juvenile gang associate to kill Little. Hines' culpability is relatively equivalent to that of Davis, and the Court should impose a similar sentence.

Tyrin Gayle, as the Court knows well, was the leader of YTMG, participated in numerous non-fatal shootings, engaged in obstructive conduct, and put the Government to its proof at trial. But Gayle did not participate in a murder; Hines did. The Court should impose a similar sentence upon Hines to reflect that brutal difference.

*Defendant's Submission*

The defendant requests an aggregate sentence of 20 years, but such a sentence is far too low for the defendant's terrible crime, and his arguments in favor of that requested sentence are wholly meritless.

The defendant is not the first person to witness terrible, violent crimes against their friends. (Def. Mem. at 14). Few of those people, however, go on to commit acts of violence against others

The Honorable Cathy Seibel
October 6, 2023
Page 7 of 8

like the defendant did.  The defendant cites the family support he will enjoy when released from incarceration, *id.* at 23, wholly ignoring that his actions ensured that Deandric Little will never be able to enjoy his family.  The defendant cites his work history, that he has been working since the age of 15, evading that those years were also filled with narcotics trafficking and gang leadership rather than lawful employment.  (*See id.* at 14).

Finally, the defendant cites to his putative remorse over Little's death.  But his posts and communications soon after the murder tell a different story.  On Facebook, he denied he was involved in the murder in private posts.  On Facebook, August 8, 2016, after a day posting denials that he was involved in the murder, he posted:

Mood 

In Facebook messages, he debated whether Isaac would cooperate after Isaac was arrested in September 2016.  In intercepted communications, he debated what to do after he received Isaac's letter in the spring of 2017: he received photos of the letter on April 19, 2017, and that same day sent a copy of the photos to his associate Algi Crawford, writing "This da nigga jammed up for mula [i.e., Deandric Little a/k/a "Moolah"]."  Crawford responded "wtf is he talking about them letter are mad hot."  On April 26, 2017, Hines received a call from Crawford, intercepted over the wiretap of Crawford's phone. In that call, among other things, Crawford said, in sum and substance, "Alright. You ever hear anything else from that little nigga that. What's that little nigga name that that sent that letter and all that. What's his name?"  Hines responded, clearly referencing Isaac, "I don't even say that boy's name over my line."

Rather than remorse over his agreement to kill Deandric Little, the defendant's communications in its immediate aftermath show only a desire to avoid its consequences.  That indicates his current remorse is of a different kind: remorse for getting caught.

### Calculating the Sentence

"The date on which a defendant's sentence commences and the credit he is to be given for time he has spent in custody are governed by 18 U.S.C. § 3585[.]" *United States v. Luna-Reynoso*, 258 F.3d 111, 116 (2d Cir. 2001).  "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  "The authority 'to determine when a sentence is deemed to 'commence' under § 3585(a) resides in the Bureau of Prisons, rather than the sentencing court." *Luna-Reynoso*, 258 F.3d at 117 (quoting *United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998)).

The Government agrees with the defense that the defendant's prior federal conviction constitutes relevant conduct in this case and supports an adjustment pursuant to U.S.S.G. § 5G1.3(b). The Government has conferred with the Bureau of Prisons to determine how the Court could impose a sentence by which the defendant would serve 30 years from the date of his arrest in June 2017.  The Bureau of Prisons informed the Government that the sentence for the instant

case will only commence when the Court imposes sentence. BOP therefore directed the Government that in order to achieve an aggregate sentence of 30 years' imprisonment on both federal cases, the judgment should state that the sentence is 25 years, 9 months, and 18 days, to run concurrently with the sentence imposed in 17 Cr. 364. That would result in a total sentence of 30 years from the date of the defendant's federal arrest in June 2017.

## Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence of a total of 30 years, and thus a sentence of 25 years, 9 months, and 18 days to run concurrently with the sentence this Court imposed in 17 Cr. 364, would adequately balance the various considerations under §3553(a) and achieve the statute's stated objectives.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  /s/
Samuel Raymond/ Jacqueline Kelly
Assistant United States Attorneys
(212) 637-6519/ 2456

Cc: Sean Maher, Esq. (by ECF)